IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal Action No. 06-74-JJF |
| | ) | |
| JONATHAN S. JOHNSON | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

**NOW COMES** the United States of America, by and through its undersigned attorneys, and hereby responds to Defendant's Motion to Suppress Evidence, as follows:

**Factual Background**

1. On March 8, 2006, at approximately 8:30 p.m., Wilmington Police Officers Donald Cramer and David Ledesma were dispatched to 855 N. Church Street, Wilmington, Delaware, in response to a caller reporting that the individual who lives there sells drugs from that address and was meeting with a group of people behind the house. That location is known for high levels of drug trafficking activity.

2. As Officers Cramer and Ledesma entered the public alley that runs behind the 800 block of N. Church Street, they immediately noticed a strong smell of freshly burnt marijuana. A short distance further down the alley, the officers saw the defendant, Jonathan Johnson, standing alone. The smell of marijuana became stronger as they approached the defendant, and the officers were able to see smoke in the defendant's vicinity.

3. When Officer Cramer ordered the defendant to show his hands, the defendant did not comply, and instead, placed his hand inside his jacket pocket. At that point, Officer Cramer withdrew his service revolver and again ordered the defendant to show his hands and to place them on a nearby fence.

4. As Officer Cramer handcuffed the defendant, the officers could see the imprint of a firearm in the defendant's jacket. Officer Cramer conducted a pat-down search, and found a Walther, model 9, .25 caliber handgun, in the defendant's right front jacket pocket.

5. The defendant was then placed under arrest, and a search incident to arrest yielded a freshly burnt hollowed out cigar containing marijuana, and a plastic baggie with a small quantity of crack cocaine. Officer Cramer asked the defendant why he had a gun. The defendant replied that the gun "was for his protection," and he also admitted to having just smoked a "blunt."[1]

## Legal Argument

6. The defendant seeks suppression of the evidence and statements obtained as a result of the pat-down, because he claims that the officers lacked reasonable suspicion to believe he was about to commit a crime or that he just committed one. Moreover, the defendant claims that the search and subsequent seizure were illegal because they occurred on "enclosed private property," without a warrant or probable cause.

---

[1] The government concedes that these statements were made in response to Officer Cramer's questions and before the defendant received the *Miranda* warnings. As they were the product of custodial interrogation, the government would not seek to introduce these statements at trial. The defendant was *Mirandized* at the police station, and invoked his Fifth Amendment right to counsel at that time.

7.     As a threshold matter, the defendant misstates the facts by claiming that the stop and pat-down search occurred in a "gated alleyway" or on "enclosed private property." The alley is not gated and is publicly accessible. While the rear yards of the houses on Church and Bennett Streets back onto the alley, the defendant was standing *outside* of the rear yard fences in the middle of the alley when the officers encountered him. This alley is accessible to public foot traffic, and does not lie within the curtilage of the defendant's home. Thus the officers needed only a reasonable suspicion of criminal activity to conduct the brief investigative stop and pat-down of the defendant. *See Terry v. Ohio*, 392 U.S. 1 (1968); *see also United States v. Dunn*, 480 U.S. 294, 302 (1987) ("It is significant that the respondent's barn [the area searched] did not lie within the area surrounding the house that was enclosed by a fence . . . . [I]t is plain that the fence surrounding the residence serves to demark a specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house."); *Oliver v. United States*, 466 U.S. 170, 180 (1984) ("[O]nly the curtilage, not the neighboring open fields, warrants the Fourth Amendment protections that attach to the home.").

8.     At any rate, the officers had probable cause to arrest the defendant after smelling freshly burnt marijuana coming from the alley. The Third Circuit has recognized that, "[i]t is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). In this case, the particularity requirement was met given that the defendant was the only person in the alley in which the officers smelled freshly burning marijuana, the marijuana smell became stronger as the officers approached the defendant, and the officers observed marijuana smoke in the defendant's vicinity. *See United States v. Humphries*, 372 F.3d

653, 559 (4th Cir. 2004) (holding that "if an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that person has committed or is committing the crime of possession of marijuana" (cited with approval by *Ramos*, 443 F.3d at 308)). Having probable cause to arrest the defendant, the pat-down was a lawful search incident to that arrest.

9. Even if this Court finds probable cause lacking, this evidence was certainly sufficient to establish a reasonable suspicion of criminal activity. The Third Circuit has held that "[t]o establish reasonable suspicion, the particularity requirement need not be as stringent as it might be for probable cause," such that the smell need not "be particularized to a specific person or place." *Ramos*, 443 F.3d at 309. Thus, in *Ramos,* the court found it sufficient to establish reasonable suspicion that the officers smelled an "identifiable marijuana odor," and that the officers could conclude that odor came from one of two vehicles parked next to one another. *Id.*

10. The defendant's initial refusal to comply with the officers' order to show his hands, and his act of reaching his hands inside his jacket, further supported the officers' probable cause or reasonable suspicion of criminal activity, including reason to suspect the defendant might have been armed. *See United States v. Moorefield*, 111 F.3d 10, 14 (3d Cir. 1997) ("Moorefield's furtive hand movements and refusal to obey the officers' orders [to show his hands and exit the vehicle] constituted suspicious behavior . . . Moorefield leaned back and appeared to shove something down toward his waist. Moorefield's behavior embodied the kind of specific, articulable facts that *Terry* contemplates and, therefore, warranted a pat-down search for weapons.").

11.     The reasonableness of the officers' suspicions was also bolstered by the fact that they were responding to a 911 call reporting suspected drug activity in the alley behind 855 N. Church Street – an area which is known for particularly high levels of drug trafficking crime. *See Wardlow*, 528 U.S. at 124 (holding that "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation" including the fact that the officers were "converging on an area known for heavy narcotics trafficking, and the officers anticipated encountering a large number of people in the area, including drug customers and individuals serving as lookouts").[2]

12.     Taking these facts together, the totality of the circumstances clearly establishes that the officers had probable cause to arrest the defendant, or at least, a reasonable suspicion to conduct a brief investigatory stop and frisk of the defendant.

**WHEREFORE,** the United States requests that the Court deny, following the evidentiary hearing, the defendant's Motion to Suppress Evidence.

---

[2]This case is distinguishable from *United States v. Roberson*, 90 F.3d 75, 79-80 (3d Cir. 1996), where the Third Circuit invalidated a stop based solely on an anonymous tip that a person matching the defendant's description was selling drugs in an area known for high levels of drug trafficking. Here, the officers could consider not only the high crime level and the anonymous tip, but also the particularized marijuana smell and the defendant's furtive and non-compliant behavior in establishing reasonable suspicion for the stop and frisk.

Respectfully submitted,

COLM F. CONNOLLY
UNITED STATES ATTORNEY

BY: _____
Ilana H. Eisenstein
Assistant United States Attorney

Dated: December 8, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal Action No. 06-74-JJF |
| | ) | |
| JONATHAN S. JOHNSON | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I, Ilana H. Eisenstein, Assistant United States Attorney for the District of Delaware, hereby certify that on the 8th day of December, 2006, I caused to be electronically filed a **Government Response to Defendant's Pre-trial Motion to Suppress Evidence** with the Clerk of the Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF. I further certify that a copy of the foregoing was mailed via first class mail to counsel of record as follows:

Ilana H. Eisenstein
Assistant United States Attorney