IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,          :
                                   :
         Plaintiff,                :
                                   :
     v.                            :  Criminal Action 06-74-JJF
                                   :
JONATHAN S. JOHNSON,               :
                                   :
         Defendant.                :

Colm. F. Connolly, Esquire, United States Attorney, and Ilana H. Eisenstein, Esquire, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF DELAWARE, Wilmington, Delaware.
Attorneys for Plaintiff.


Raymond M. Radulski, Esquire, Wilmington, Delaware.
Attorney for Defendant.

### MEMORANDUM OPINION

March 29, 2007
Wilmington, Delaware



FILED

MAR 3 0 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Farnan, District Judge.

    Presently before the Court is the Motion To Suppress Evidence (D.I. 20) filed by Defendant, Jonathan S. Johnson. For the reasons set forth below, Mr. Johnson's Motion will be granted in part, to the extent that he requests suppression of his statements to police, and denied in part, to the extent that he challenges the evidence obtained from the investigative stop and search incident to his arrest.

## I. Background

    Defendant Jonathan S. Johnson was indicted on one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On November 22, 2006, Mr. Johnson moved, pursuant to Federal Rules of Criminal Procedure 12(b)(3) and 41(f) and the Fourth Amendment of the United States Constitution, to suppress all evidence directly or indirectly derived from the search and seizure of his person on March 8, 2006, as well as all oral or written statements made by him.

    The Court held an evidentiary hearing on the Motion To Suppress Evidence (D.I. 20) on December 18, 2006, and post-hearing briefing was completed on January 18, 2007. Wilmington Police Officer David Ledesma and Defendant Jonathan S. Johnson testified at the hearing. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law regarding the instant Motion.

**II. Findings of Fact**

1. Officer David Ledesma was a patrolman with the Wilmington Police Department at all times relevant to this Motion.[1] (Tr. 5).[2]

2. On March 8, 2006, at approximately 8:15 p.m., the Wilmington Police Department received an anonymous telephone complaint reporting that the individual living at 855 N. Church Street dealt drugs from that address and was meeting a group of people behind the house to "[do] something." D.I. 20.

3. Mr. Johnson was one of the individuals living at 855 N. Church Street at all times relevant to this motion. (Tr. 48).

4. The caller did not describe the suspected activity nor any of the individuals complained about. Id.

5. At approximately 8:30 p.m., Wilmington Police Officers Donald Cramer and David Ledesma were dispatched to 855 N. Church Street in response to the anonymous complaint. (Tr. 6).

6. The officers responded to the corner of 9th and Bennett Streets, joined with Officer Mullins, and then walked east to an alleyway behind the 800 block of N. Church Street. (Tr. 17). As

---

[1] Although the Court found discrepancies between Officer Ledesma's testimony and his police report, the Court credits Officer Ledesma's testimony based on typical considerations for assessing credibility. (See Tr. 13, 28, 40-41). Further, the Court finds that the discrepancies were the result of mistake and inadvertence, not intentional untruthfulness.

[2] "Tr." refers to the Transcript of the December 18, 2006 Suppression Hearing. (D.I. 26).

3

they approached the alleyway they noticed the light smell of marijuana. Id. When the officers entered the alleyway, the smell of marijuana grew stronger. (Tr. 20-21).

7. Mr. Johnson often visits his friend Charlotte's house to talk and/or smoke marijuana. (Tr. 50, 67, 75).[3] Looking south from 9th Street, Charlotte's house is the seventh house on Bennett Street, adjacent to the alleyway the officers approached.

8. After entering the alleyway, the officers saw Mr. Johnson standing alone, fifteen to twenty-five feet down the alleyway. He was in the vicinity of a cloud of smoke. (Tr. 20-21, See also Tr. 31, 28).

9. When the officers shone their flashlights on Mr. Johnson, he put both hands into his pockets and turned away from the officers. (Tr. 20)

10. At that point, Cpl. Cramer drew his service weapon and ordered Mr. Johnson to place his hands on a nearby fence.[4] (Tr.

---

[3] Mr. Johnson contends that he had not been smoking marijuana at the time of or immediately before the arrest because he had smoked earlier that day. (Tr. 75). Mr. Johnson further contends that he was in Charlotte's yard, not the alleyway, at the time of the arrest. However, the Court credits Officer Ledesma's testimony over Defendant's testimony.

[4] Based on his recollection of the alleyway, Officer Ledesma testified that he believed this fence was a six-foot high wooden fence. Officer Ledesma's recollection was incorrect. At around the sixth or seventh house on Bennett Street, the fences in the alleyway transition from six-foot high picket fences to waist high chain-link fences. (D.I. 24, 25). However, the Court finds Officer Ledesma's error to be a discrepancy that the Court referenced earlier, which does not diminish his overall

4

22, 52). Mr. Johnson complied after the second request. (Tr. 22).[5]

11. Once Cpl. Cramer handcuffed Mr. Johnson and turned him to face the other officers, Officer Ledesma noticed the outline of a gun in Mr. Johnson's right jacket pocket. (Tr. 23-24). A Walther .25 caliber handgun was removed from that pocket. Id.

12. Mr. Johnson was then placed under arrest and a search incident to arrest was conducted, which revealed an unlit, but burnt, cigar "blunt" containing marijuana, and a plastic baggie with a small amount of crack cocaine. (Tr. 25).

13. After Mr. Johnson was arrested, but before he received his Miranda warnings, Officer Cramer asked him why he had a gun, to which Mr. Johnson replied that it was for protection. (Tr. 26-27, D.I. 21 at 2).

14. In the same conversation, Mr. Johnson also admitted to having just smoked a "blunt." Id.

15. Mr. Johnson appeared visibly intoxicated or under the influence of something. (Tr. 92).

---

credibility.

[5] Mr. Johnson contends that Cpl. Cramer handcuffed him, pulled him out of Charlotte's yard, through an unlocked gate, and into the alleyway. Mr. Johnson further contends that Cpl. Cramer immediately searched him, ultimately finding a handgun in Mr. Johnson's pocket. (Tr. 53, 64). The Court does not credit this testimony over the testimony of Officer Ledesma.

**III. Conclusions of Law**

A. <u>Whether The Search Of Mr. Johnson's Person Was Unconstitutional</u>

1. The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

2. A defendant who files a motion to suppress ordinarily carries the burden of proof. <u>Rakas v. Illinois</u>, 439 U.S. 128, 130 n. 1 (1978). However, where a search is conducted without a warrant, as is the case here, the burden shifts to the Government to demonstrate by a preponderance of the evidence that the search was conducted pursuant to one of the exceptions to the warrant requirement. See <u>United States v. Herrold</u>, 962 F.2d 1131, 1137 (3d Cir. 1992).

3. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause," unless it falls under an exception to the warrant requirement. See <u>United States v. Robertson</u>, 305 F.3d 164, 167 (3d Cir. 2002). Evidence obtained pursuant to a warrantless search that does not meet an exception to the warrant requirement must be suppressed as "fruit of the poisonous tree." <u>United States v. Brown</u>, 448 F.3d 239, 244 (2006) (citing <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963)).

4. Police are vested with constitutional authority to conduct a limited, warrantless, investigatory stop in a public place if an officer has a reasonable suspicion of criminal activity. See Terry v. Ohio, 392 U.S. 1 (1968); United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Roberson, 90 F.3d 75, 76 (1996).

5. Reasonable suspicion requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Brown, 448 F.3d at 246 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Cortez, 449 U.S. at 417. While Fourth Amendment jurisprudence demands particularized suspicion, courts also recognize that officers must be allowed "to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002); see also Brown, 448 F.3d at 446; United States v. Nelson, 284 F.3d 472, 476 (3d Cir. 2002).

6. Reasonable suspicion is to be viewed from the vantage point of a "reasonable, trained officer standing in [the detaining officer's] shoes." Johnson v. Campbell, 332 F.3d 199,

7

206 (3d Cir. 2003).

7. Whether the police have reasonable suspicion is determined from the totality of the circumstances. Cortez, 449 U.S. at 417.

8. In the instant case, viewing the totality of the circumstances in light of the officers' experience and training, the Court concludes there was a reasonable basis for the officers to believe that Mr. Johnson was engaged in criminal activity, and therefore, the initial stop of Mr. Johnson was justified.

9. While the anonymous tip that initially directed Officer Ledesma and Cpl. Cramer to the alleyway may have been unreliable, once in the alleyway, they smelled freshly burnt or burning marijuana. Mr. Johnson was the only person in the alleyway, and it was reasonable for the officers to attribute the strengthening marijuana smell and nearby smoke cloud to him. Additionally, the officers were in an area known for high drug activity.[6] Thus, the officers, knowing they were in an area with a reputation for drug activity, knowing that consumption of marijuana is a crime, and reasonably linking the marijuana smoke and smell with the only person in the alley, had reasonable suspicion to conduct an investigative stop.

---

[6] While the area's reputation for narcotics activity would not, standing alone, justify the officers' actions, it is a factor to be considered in the totality of the circumstances. See United States v. McCray, 148 F. Supp. 2d 379, 387.

10. The Court further concludes that the officers were justified in arresting Mr. Johnson and conducting a search incident to the arrest. Officer Ledesma's observation of the gun in Mr. Johnson's jacket pocket, coupled with the circumstances connected with the initial stop, leads the Court to conclude that the officers had probable cause to arrest Mr. Johnson. Therefore, the Court concludes that the search incident to the arrest was also valid.

11. Accordingly, the Court concludes that the evidence obtained as a result of the investigative stop and search incident to the arrest is admissible, and therefore, the Court will deny this portion of Mr. Johnson's Motion To Suppress Evidence (D.I. 20).

B.  Whether Mr. Johnson's Statements To The Police Are Admissible

Both parties are in agreement that Mr. Johnson's statements about having a gun for protection, and about drug consumption are inadmissible because they were made to the police after Mr. Johnson's arrest but before he received his *Miranda* warnings. (See D.I. 21, note 1). Accordingly, this portion of Mr. Johnson's Motion To Suppress Evidence (D.I. 20) will be granted and the statements will be suppressed.

**IV. Conclusion**

For the reasons discussed , Mr. Johnson's Motion To Suppress Evidence (D.I. 20) will be granted in part and denied in part.

9